# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

STUART SEUGASALA,

    Petitioner,

v.                                                            CASE NO. 5:18-cv-479-Oc-02PRL

WARDEN, FCC COLEMAN, USP II,

    Respondent.

_____/

# **O R D E R**

This cause comes before the Court on the Petition for Writ of Habeas Corpus (Dkt. 1) filed by Stuart Seugasala pursuant to 28 U.S.C. § 2241, and the response (Dkt. 5).[1] After careful consideration of the submissions of the parties and the entire file, the Court concludes the petition should be denied.

## BACKGROUND

Stuart Seugasala is a federal inmate who was housed at the Federal Correctional Complex, United States Penitentiary Coleman II in Sumter County, Florida, when he filed the petition. Dkt. 5 at 2.[2] He is serving a life sentence

---

[1] No reply has been filed and the time for doing so has passed. *See* Dkt. 4 (Order/Notice to Petitioner).

[2] Petitioner has not filed a notice of change of address. *See* Dkt. 4. Using his register

imposed by the United States District Court in Alaska. *Id*. at 15-22. In March 2016, he was disciplined by the Bureau of Prisons ("BOP"). *Id*. at 31-33. He contends the disciplinary infraction and sanctions that followed should be overturned and expunged from his record. Dkt. 1 at 2, 8.

## THE BOP RECORD

*<u>Incident and Disciplinary Proceedings</u>*

On February 24, 2016, Petitioner was housed at the Federal Correctional Institution in Tucson, Arizona. Dkt. 5 at 24. That day he was written up for possession of drugs (Incident No. 2819760) in violation of 28 C.F.R. § 541.3, Table 1 at 113 ("Code 113").[3] *Id*. At 2:30 p.m., Officer Tyler conducted a pat down search of Petitioner. *Id*. The initial report described the incident in full as follows:

> During the Pat Search, I [Officer Tyler] had discovered a round clear plastic cylinder, containing multiple white strips of paper hanging from the Inmate's sweatpants draw string. Utilizing the NIK Test Kit, Tests A, B and K, the white strips tested positive for "STP."[4]

---

number (14039-006), the Bureau of Prisons website shows that he is currently housed at "Tucson USP." *See* https://www.bop.gov/inmateloc/ (last visited on November 7, 2019). Given the § 2241 petition was properly filed in the district court where the prisoner was confined, s*ee Rumsfeld v. Patilla*, 542 U.S. 426, 447 (2004), Petitioner's transfer to other prison facilities does not destroy this Court's jurisdiction. *See Major v. Warden, FCC Coleman - Low*, No. 5:18-cv-269-Oc-02PRL, 2019 WL 4194673, at *1 (M.D. Fla. Sept. 4, 2019) (citing cases).

[3] "Table 1–Prohibited Acts and Available Sanctions, Greatest Severity Level Prohibited Acts, . . . 113 Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff."

[4] "STP" is methyldimethoxy-alpha-methylphenethylamine, which is a hallucinogen. *See United States v. McVean*, 436 F.2d 1120, 1121 n.2 (5th Cir. 1971); 21 C.F.R. § 1308.11 (d) (9) (noting trade name of hallucinogens "DOM" and "STP" as Schedule I controlled substances).

Id. After being advised of his rights, Petitioner told the investigating lieutenant: "Does it matter if it was a strip search? They stripped me out and I had it in the back of my pants." *Id*. at 25.

The incident report was forwarded to the Unit Discipline Committee ("the UDC" or "the Committee"), and a hearing was held on February 29, 2016. *Id*. at 24. Petitioner told the Committee that "it was my items." *Id*. The Committee referred the matter to the Discipline Hearing Officer ("DHO") due to the seriousness of the charge. *Id*. at 24-25.

Petitioner was given timely notice of the hearing before the DHO and was advised of his rights. *Id*. at 27, 29. He requested a staff representative but did not wish to call any witnesses. *Id*. at 27. At the hearing before the DHO on March 15, 2016, he was again advised of his rights, and gave the following statement:

> Does it matter if it was a strip search? They stripped me out and I had it in the back of my pants. It was a strip search. I am questioning the test; I didn't know I was exposing myself to a 100 series level incident. I'm going to do what I can get away with.

*Id*. at 31. The DHO determined that the incident report, photographs of the tested drug strips, statements made by Petitioner, and the positive test results, supported a finding of guilt for possession of drugs, based on the greater weight of the evidence. *Id*. at 32. Sanctions imposed were 21 days disciplinary segregation and a one year

3

loss of visiting and phone privileges. *Id*. at 32-33.

## *Initial Appeal and Rehearing*

Petitioner appealed the DHO decision. The regional appellate office remanded and directed the Tucson institution to "rewrite, reinvestigate the incident report and process it anew." *Id*. at 44. On remand, the newly written incident report described the February 2016 incident as follows:

> During the pat search, I discovered a round clear plastic cylinder, containing *twelve* white strips of paper hanging from the Inmate's sweatpants draw string. Utilizing the NIK Test Kit, *I discovered the white strips inmate Seugasala had in his possession were drugs*. Specifically, using the Tests A, B and K, the white strips tested positive for "STP," *which is an opiate. The drugs were photographed, secured, tagged as ECN-TCP-16-0187, and placed in the evidence locker. This is a re-write*.

*Id*. at 46 (emphasis to denote language added). On May 20, 2016, the report was given to Mr. Seugasala, and he was advised of his rights. *Id*. at 46-47. He declined to make a statement to the officer. *Id*. at 47.

At the rehearing before the UDC on May 28, 2016, Petitioner made the following comment: "This is a violation of my due process right that the report was rewritten after my DHO sanctions and hearing." *Id*. at 46. The UDC referred the matter to the DHO. *Id*.

He was again advised of his rights before the DHO on June 8, 2016. *Id*. at 53. He made the following statement to the DHO:

4

> I [saw] the pictures from the officer. The NIK test kit
> doesn't look right. There is a lot of documentation that
> shows the NIK test gives false positives. STP is not an
> opiate. I have a life sentence. Had I known it was a 100
> series level incident report, I wouldn't of held it. It was
> twelve doses. It is two different kinds of drugs.

*Id.*[5] The DHO found that the greater weight of the evidence, which consisted of the incident report, photographs, statement made by Mr. Seugasala, and the positive test results, showed he violated Code 113. *Id.* at 54-55. The same sanctions were imposed to "remain from 3/15/2016." *Id.* at 55.

## *Appeal after Rehearing*

He appealed to the proper regional office the DHO decision on rehearing. Dkt. 5 at 74; Dkt. 1 at 11. On appeal he requested that the incident report be expunged from his BOP record. *Id.* He raised four issues: (1) the drug samples should have been retested by a lieutenant to comply with the regional office's instructions to "reinvestigate" the incident; (2) the three NIK test results were conflicting, inconclusive, and unreliable and a laboratory should have re-tested the samples; (3) the samples tested positive for STP, which the incident report incorrectly refers to as an opiate;[6] and (4) simply rewriting the incident report after a

---

[5] Although he requested Officer Tyler to appear as a witness, the DHO determined that the officer's testimony was adverse and was already summarized in the incident report. Dkt. 5 at 53; *see* 28 C.F.R. § 541.8(f)(2) ("DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.").
[6] He contends that the regulations list STP as an amphetamine, not an opiate, and therefore he could not have been found guilty of possessing an opiate, as the report indicated. Dkt. 1 at 2, 7,

5

finding of guilt violated his due process rights. *Id*. The appeal was denied. Dkt. 5 at 72–73.

He appealed the denial to the central office and raised essentially the same grounds. Dkt. 5 at 71; Dkt. 1 at 10. In the first argument, he focused on the staff's failure to retest the paper strips and failure to rewrite the incident report without "a conclusive test result." Dkt. 1 at 10. For the second ground, he articulated that one of the NIK tests showed cocaine and another was "inconclusive between the color of the liquid and the color code on the testing kit." *Id*. His third ground is the same as his prior fourth ground (rewriting incident report violates due process). *Id*. The new fourth ground states that the DHO failed to consider documentary evidence presented through his staff representative, "C-Unit Manager Adamica." *Id*. There is no description of the documentary evidence. *Id*. The appeal was denied and closed in May 2017. *Id*. at 70.

In this § 2241 petition he raises five grounds, which include all the grounds previously raised in the administrative appeals process. Dkt. 1 at 6–8.

---

14. As noted in footnote 3 of this Order and in his own Exhibit 5 attached to his petition, STP is listed as a hallucinogen. *See* 21 C.F.R. § 1308.11(d)(9).

**DISCUSSION**

*Cognizable Claims*

Challenges to federal prison disciplinary proceedings may address either the conditions of confinement, or the fact or duration of the sentence. *See Prieser v. Rodriguez*, 411 U.S. 475, 489, 498 (1973). Not all the challenges may be brought by habeas proceedings. *Id.*[7] "The petition for writ of habeas corpus traditionally has been accepted as the specific instrument to obtain release from unlawful confinement." *Robinson v. Warden, FCC Coleman – USP II*, No. 5:16-cv-565-Oc-10PRL, 2018 WL 9649792, at *3 (M.D. Fla. Nov. 14, 2018) (internal quotation marks omitted) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) and *Preiser*, 411 U.S. at 487), *aff'd*, 772 F. App'x 886 (11th Cir. 2019). Habeas corpus "cannot be used for any other purpose." *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir.), *revised by* 596 F.2d 658 (5th Cir.), *cert. denied*, 442 U.S. 932 (1979).[8]

---

[7] For example, challenges based on civil rights violations may proceed, if appropriate, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Robinson v. Warden, FCC Coleman – USP II*, No. 5:16-cv-565-Oc-10PRL, 2018 WL 9649792, at *3 (M.D. Fla. Nov. 14, 2018), *aff'd*, 772 F. App'x 886 (11th Cir. 2019); *Scotton v. Johns*, No. 5:17-cv-20, 2017 WL 4150469, at *4 (S.D. Ga. Sept. 19, 2017), *adopted by*, 2017 WL 6028399 (S.D. Ga. Dec. 5, 2017). Notably, "[t]here is a 'line of demarcation' between habeas claims and civil rights claims." *Gorrell v. Hastings*, 541 F. App'x 943, 945 (11th Cir. 2013) (citing *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) and affirming district court's rejection of federal statutory disability discrimination claims brought by way of §2241 habeas).

[8] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) *(en banc)*, the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Disciplinary actions that affect only the conditions of confinement are not considered "unlawful confinement" subject to habeas unless the conditions affect the "fact or duration" of sentence. *See Tejada v. Johns*, No. 5:15-cv-2, 2016 WL 3546379, at *3 (S.D. Ga. June 23, 2016) (dismissing § 2241 petition challenging conditions of confinement and citing *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) and *Thomas v. McDonough*, 228 F. App'x 931, 931–32 (11th Cir. 2007)), *adopted by*, 2016 WL 3963931 (S.D. Ga. July 19, 2016).[9] Examples of conditions include loss of visitation, commissary, and phone privileges. *Tejada*, 2016 WL 3546379 (loss of commissary and phone); *William v. Warden*, 1:10-cv-1372-RWS, 2010 WL 2594995, at *2–3 (N.D. Ga. June 24, 2010) (loss of visitation).

Loss of good conduct time, unlike loss of privileges, affects the fact or duration of the sentence. *See Bryant v. Clay*, No.1:16-cv-1750-LSC-HNJ, 2017 WL 4678484, at *2–3 (N.D. Ala. Sept. 15, 2017) (relying on Eleventh Circuit precedent, including *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990), to find that disciplinary action not resulting in loss of good conduct time cannot be challenged under § 2241), *adopted by*, 2017 WL 465085` (N.D. Ala. Oct. 17, 2017).[10] Loss of

---

[9] "Claims challenging the fact or duration of sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citations omitted).

[10] *Cf. Robinson*, 2018 WL 9649792, at *3 (noting in context of § 2241 petition that "detention in the special housing unit did not result in loss of good conduct time or otherwise alter the length of confinement").

certain privileges must be accompanied by the loss of good conduct time to fall within the purview of § 2241.

Against this backdrop, the Court finds the claims raised here are not cognizable in habeas proceedings. As a recipient of a life sentence, Mr. Seugasala was not eligible for loss of good conduct time. *See Bryant*, 2017 WL 4678484, at *3 (citing 18 U.S.C. § 3624(b)(1)).[11] Nor does this record show that the BOP ever attempted to remove any good conduct time from his sentence. As noted above, without the loss of good conduct time, his loss of phone and visiting privileges are not cognizable in a § 2241 petition.

The only remaining, possible claim is 21 days administrative placement in special housing. A claim challenging disciplinary segregation may or may not be appropriate to raise in a petition under § 2241. *See Evans v. Warden, FCC Coleman – Low*, No. 5:18-cv-121-Oc-10PRL, 2018 WL 6075493, at *2 (M.D. Fla. Nov. 21, 2018) (finding placement in special housing unit did not result in loss of good time or otherwise alter length of confinement and therefore was not cognizable in § 2241 petition).[12] To the extent a special housing challenge may be brought, Petitioner does

---

[11] *See also McClinton v. Warden, FCC Coleman – USP II*, No. 5:10-cv-333-Oc-29SPC, 2012 WL 5493857, at * (N.D. Fla. Nov. 13, 2012) (holding petitioner serving life sentence is unaffected by sanction of loss of good conduct time because it does not change length of sentence).

[12] *See also Robinson*, 2018 WL 9649792, at *3 n.2 (finding same but noting petitioner was not requesting release from special housing); *Casado v. Hastings*, No. CV214-135, 2015 WL 5092614, at *5 (S.D. Ga. Aug. 28, 2015) (noting mere placement of inmate in special housing does not by itself constitute change in condition of confinement if not atypical hardship—not "much

not describe how the conditions are atypical of or significantly more difficult than regular housing. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding disciplinary segregation must impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to obtain habeas relief).

Notwithstanding that a petition for habeas may be the proper vehicle to seek release from administrative segregation, if the prisoner has completed the stint in special housing the petition is moot. *Medberry v. Crosby*, 351 F.3d 1049, 1053–54 (11th Cir. 2003). Based on the allegations in his petition, Petitioner has likely already served his time in disciplinary segregation. He does not refer to the 21 days in segregation.[13] He merely requests that either his sanctions be rescinded or his "visits [be] restored immediately (They are presently suspended until June of 2020)." Dkt. 1 at 8.

## *Merits*

Even if the claims were properly before this Court, Mr. Seugasala was not deprived of due process in connection with the challenged disciplinary conviction. The federal court's review is limited to two areas. First, the conduct of the

---

worse than those conditions for prisoners in the general population").

[13] The Court chooses not to construe the petition as a *Bivens* action. *See Medina v. Warden, FCC Coleman–USP I*, No. 5:10-cv-530-Oc-38PRL, 2014 WL 345703, at *2 (M.D. Fla. Jan. 30, 2014) (finding prisoner correctly filed habeas petition rather than civil rights complaint because he sought release from or change in housing restrictions).

disciplinary proceedings must satisfy procedural due process by 1) providing advance written notice of the charge, 2) giving the opportunity to call witnesses and present documentary evidence consistent with safety concerns in prison, and 3) requiring the DHO issue in writing the evidence relied on and the reasons for disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974); *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011). Second, procedural due process requires that only "some evidence" support the decision. *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 447 (1985). The habeas court need not retry or review the DHO's decision *de novo*.

Mr. Seugasala's overarching objection is that his due process rights were violated based on the mere rewriting of the incident report, after he was found guilty on conflicting drug test results. He contends that without retesting the drugs, it cannot be proven that he was guilty of either 1) possessing a prohibited substance, based on the initial inadequate testing, or 2) possessing an opiate because he admitted to possessing twelve doses of STP, which is not an opiate. He also argues that the regional appellate office instructed the BOP on remand to retest the drugs.

Each of Petitioner's five grounds will be addressed and resolved applying the directives of *Hill* and *Wolff*.

1. **Ground One**: Failure to reinvestigate/retest

   Staff failed to follow the region's directive to reinvestigate the incident.

(The region granted my appeal.) The region instructed the institution to retest the paper that is the basis of the [conviction]. However, USP Tucson failed to do this and simply rewrote the incident report. Dkt. 1 at 6.

The regional office initially remanded the case with the following instructions:

> On appeal, the appropriate official may approve, modify, reverse, or send back with directions, including ordering a rehearing, any discipline action of the [UDC] or DHO, but may not increase any valid sanction imposed. We are directing staff to rewrite, reinvestigate the incident report and process it anew.

Dkt. 5 at 44. Capable of approving, modifying, reversing, or sending back with directions, the regional office chose the last. The decision of the DHO was not reversed, meaning that his grievance was not granted as Petitioner asserts (Dkt. at 7). The BOP staff was directed to rewrite and reinvestigate the report and to process it a second time.

Contrary to Petitioner's contention, the directions to the staff did not include retesting the paper strips. Petitioner equates reinvestigating with retesting the drugs, specifically using a test other than the NIK kit. A retesting of the drugs was never ordered by the regional office, and reinvestigating does not mean retesting. Reinvestigating means to again "observe or study by close examination and systematic inquiry." Investigate, Merriam-Webster, https//www.merriam-webster.com/dictionary/investigate (last visited Nov. 13, 2019). In the context of retesting for drugs, retesting means to again "be assigned a standing or evaluation on

12

the basis of tests" as in "tested positive for cocaine." Test, Merriam-Webster, https//www.merriam-webster.com/dictionary/test (last visited Nov. 13, 2019).

In disciplinary proceedings, an inmate is not entitled to confirmation of drug testing. *Rivas v. Cross*, No. 2:10-CV-98, 2011 WL 1601288, at *4 (N.D. W. Va. Apr. 27, 2011); *see also Casado v. Hastings*, 2015 WL 5092614, at *6 (S.D. Ga. Aug. 27, 2015) (confirming no right to discovery of prisoner's DNA to contest his disputed positive drug screen in prison disciplinary proceeding). In *Rivas*, the prisoner was not permitted to obtain additional testing on the "green leafy substance" by a certified or independent, qualified outside laboratory. *Rivas*, 2011 WL 1601288, at *4. Here, as in *Rivas*, the Petitioner is not entitled to confirmation drug testing to challenge the findings at the DHO hearing.

The DHO findings were based on "some evidence" under *Hill*—the testing of the drug strips, which tested positive for STP. The Petitioner received timely written notice, the opportunity to call witnesses and present documentary evidence, and a written statement by the DHO outlining the evidence and the reasons for disciplinary action as required by *Wolff*. The incident was reinvestigated, by again observing by close examination and inquiry, after the initial remand in accordance with the directive of the appellate office. The appellate office did not order the retesting of the paper strips, and the Petitioner had no right to a retesting.

2. **Ground Two:** Reliance on inconclusive lab tests

> The paper that is at issue in this appeal was tested three times by the institution's "NIK" tests. Each test produced a different result for varying substances. (See Exhibit #4). BOP relied on presumptive NIK test not conclusive lab test. The varying results of the NIK tests are part of the record. Dkt. 1 at 7.

Petitioner cites to "Exhibit #4" to substantiate his claim that the test results were inconclusive. Exhibit 4 is a web page from a company that sells NIK kits. The company claims "this well-established and reliable system" for identifying street drugs, has been "ruled as sufficient to meet the people's prima facie case burden" in most jurisdictions. Dkt. 1 at 13. On its face, this exhibit does not support the position that the tests are generally inconclusive. Neither do unvalidated statements allegedly made by prison staff members that the NIK test has "delivered false positives before." Dkt. 1 at 10.

To the extent he asserts his due process rights were violated because the incident report was based on incorrect, scant, or untrustworthy drug and narcotics field test kits, his claim fails. *Cf. Pruitt v. Warden, FCC Coleman*, 5:05-cv-403-Oc-10GRJ, 2009 WL 812079 (M.D. Fla. Mar. 25, 2009) (finding claim of "fabricated" incident report lacked merit because disciplinary conviction for disobeying and threatening prison staff member was supported by "some evidence" under *Hill*). The twelve strips tested positive for STP. Not only is STP a Schedule I drug, but the

14

possession of STP violates Code 113 of the prison regulations. The positive results

of the NIK drug tests constitute "some evidence" under *Hill* that the Petitioner

possessed STP.[14]

3. **Ground Three:** Conviction not based on charge

> The substance that the BOP claims the paper at issue tested positive for is STP. According to [DEA] STP is listed as an amphetamine, yet I was charged with possessing an opiate (and convicted). Dkt. 1 at 7.

Mr. Seugasala essentially argues that because the incident report incorrectly

classifies STP as an opiate, his conviction should be overturned. Contrary to

Petitioner's allegation, however, neither is STP listed as an amphetamine. STP is

listed as a hallucinogenic substance, and STP is a narcotic and a drug not prescribed

by the medical staff as set forth in the criteria for a violation of Code 113. *See* 21

C.F.R. § 1308.11(d)(9) (STP is hallucinogenic substance); 28 C.F.R. § 541.3, Table

1, Code 113 ("Possession of any narcotics, marijuana, drugs, . . . not prescribed for

the individual by the medical staff."). Any error in describing the proper category of

drug for STP is harmless. The prison disciplinary violation is based on STP as a

"narcotic" or "drug" under Code 113.

At the rehearing before the DHO, Petitioner admitted that had he "know[n] it

---

[14] As noted in Ground One, the Petitioner received due process under *Wolff*.

15

was a 100 series level" drug, he would not have "held it." Dkt. 5 at 53. He admitted it was "twelve doses" of "two different kinds of drugs." *Id*.

4. **Ground Four:** Improper rewriting of incident report

> Staff should not be allowed to rewrite an incident report after a successful appeal and use the successful verbiage of the appeal to reprosecute me. Dkt. 1 at 8.

This ground is without merit. The staff followed the instructions on remand to rewrite the incident report. The additions in the rewritten report pertain to the precise number of "white strips of paper" hanging from the Petitioners sweatpants and specifically tie the white strips to the Petitioner. The report also sets forth the way the drug tests were catalogued and kept at BOP. The Petitioner had proper notice in keeping with *Wolff*, and the DHO's findings were based on the requisite evidence according to *Hill*.

5. **Ground Five:** Exclusion of documentary evidence

> The DHO failed to include documentary evidence that my staff member representative presented. Dkt. 1 at 8.

There is neither a description of the documentary evidence, nor an explanation of its significance. Nothing in the record indicates that physical evidence was submitted by the representative staff member. Without more this claim is insufficient on its face.

It is therefore **ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is denied. The Clerk is directed to enter judgment for Respondent, terminate any pending motions and deadlines, and close the case. Because a federal prisoner does not require a certificate of appealability to appeal the denial of a § 2241 petition, *see Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003),[15] this Court will neither issue nor decline certification.

**DONE AND ORDERED** at Tampa, Florida, on November 25, 2019.

*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record and Petitioner, *pro se*

---

[15] *See also Flint v. United States*, 463 F. App'x 876, 878 (11th Cir. 2012); *Rey v. Warden*, 359 F. App'x 88, 89 n.1 (11th Cir. 2009); *United States v. Nixon*, No. 8:17-cv-1597-T-23TBM, 2017 WL 2958925, at *3 (M.D. Fla. July 11, 2017).